UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RELEVENT SPORTS, LLC,

              Plaintiff,

- against -

CARMELO STILLITANO,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

1:22-cv-2917

Plaintiff Relevent Sports, LLC ("Relevent"), by and through its attorneys, as and for its Verified Complaint against Defendant Carmelo "Charlie" Stillitano ("Stillitano") alleges as follows:

## INTRODUCTION

1. This action arises from Stillitano's violation of his non-solicitation and non-competition contractual obligations.

2. Relevent is the preeminent soccer events and media company in North America and Asia due, in large part, to the time and resources that Relevent has devoted over the past decade to cultivating relationships with European soccer clubs, large-scale venues, and media companies.

3. As Relevent's Co-Founder and Executive Chairman through May 7, 2021, Stillitano was responsible for developing Relevent's business strategies and fostering these key business relationships and partnerships. Stillitano also had unfettered access to Relevent's confidential and proprietary information and trade secrets.

4. In recognition of Stillitano's senior-most role and unique skills, he agreed in an Employee Covenants Agreement dated June 21, 2018 (the "Covenants Agreement") that for a period of twelve (12) months after his employment ended, he would not solicit Relevent's clients,

customers, sponsors, collaborators, participant soccer clubs or teams, vendors, or service providers or compete with Relevent by – for example – organizing any soccer matches in the United States. The Covenants Agreement is attached hereto as **Exhibit 1**.

5. Since departing Relevent on May 7, 2021, Stillitano has done precisely what the Covenants Agreement prohibits. Among other things, Stillitano is (directly and through his current business partners) organizing and marketing soccer matches involving the same European soccer clubs and the same venues as he organized and marketed during his employment with Relevent.

6. Relevent seeks injunctive relief to enjoin Stillitano, his agents, and all those acting in active concert or participation with Stillitano from violating the clear terms of the Covenants Agreement. Absent injunctive relief, Relevent will continue to suffer irreparable harm from Stillitano's breach of the Covenants Agreement, including the loss of significant business opportunities, client relationships, and good will, as well as harm to its reputation. In order to ensure Relevent gets the full benefit of its bargain, Relevent also seeks an extension of the restrictive covenants to account for the period in which Stillitano was unlawfully violating his contractual obligations.

## THE PARTIES

7. Plaintiff Relevent is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York, New York.

8. Upon information and belief, Defendant Stillitano is a resident of the State of New Jersey and currently resides in Westfield, New Jersey. Stillitano is a Co-Founder and former Executive Chairman of Relevent.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendant Stillitano because he agreed in the Covenants Agreement that:

> Any action for a temporary restraining order, injunction, or other equitable relief brought to enforce the terms hereof may be brought only in the courts of the State of New York, New York County, or in the United States District Court for the Southern District of New York. By Executive's execution and delivery of this Covenants Agreement, Executive submits to the exclusive jurisdiction of the above-referenced courts, waives any objection to such jurisdiction on the grounds of venue or forum *non conveniens* or any similar grounds, consent to service of process by mail or any other manner permitted by law, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Covenants Agreement. This consent to jurisdiction shall not be deemed to confer rights on any person other than the Company Group.

Ex. 1, ¶ 8(d). This Court also has personal jurisdiction over Defendant Stillitano pursuant to NY CPLR § 302(a) because he regularly conducts, solicits, or transacts business in New York and in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### I. Relevent

12. Relevent is the premier soccer events and media company in North America and Asia.

13. Since 2013, Relevent has organized soccer tournaments and matches involving the world's top soccer clubs, including A.C. Milan, Arsenal F.C., A.S. Roma, Atletico Madrid, Celtic

3

F.C., Everton F.C., FC Barcelona, Chelsea F.C., Inter Milan, Juventus, Leicester City F.C., Liverpool F.C., Manchester United, S.S.C. Napoli, Olympique Lyonnais, Paris Saint-Germain, Rangers R.C., Real Madrid, and Tottenham Hotspur F.C.

14. Relevent's events promotion business is dependent on establishing relationships with European soccer clubs, operators of large-scale venues, and major media organizations, which is difficult to accomplish and sustain.

15. Relevent's success is due, in large part, to the time and resources it has devoted to years of development and sustainment of these business relationships.

## II. Charlie Stillitano

16. In or around October 2012, Relevent hired Stillitano, one of its Co-Founders. In or around 2018, Stillitano's title changed to Executive Chairman.

17. Throughout his tenure as a senior executive at Relevent, Stillitano was responsible for, among other things, setting company-wide strategy, developing and fostering Relevent's relationships with clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors, and service providers, and promoting new business opportunities.

18. In 2017, ESPN identified Stillitano as one of the fifty most influential individuals in the soccer industry noting that Stillitano had "established himself as the go-to person in [the] field" when it came to the "marketing and money" of soccer events involving European soccer clubs in the United States. An excerpt of that article titled, "The 50 most influential people in football: ESPN FC's 2017 countdown," dated July 18, 2017 is attached hereto as **Exhibit 2.**

19. Stillitano had access to Relevent's highly confidential and proprietary information and trade secrets throughout his employment with Relevent.

20. For example, Stillitano accessed and reviewed Relevent's confidential rights fee agreements with European clubs and national teams, which include highly confidential financial and other material terms only known to the parties.

21. Stillitano was also directly involved in developing Relevent's confidential marketing strategies for promoting its events and tournaments.

22. Stillitano was privy to Relevent's confidential agreements with large venues (mainly stadiums) across the United States, as well as Relevent's key contacts responsible for operating those venues.

23. Stillitano had access to all of Relevent's financial and performance-related data concerning, for example, ticket sales, sponsorship revenue, and media sales.

### III. Stillitano's Covenants Agreement

24. Stillitano agreed to an Employment Agreement dated June 21, 2018. The Employment Agreement is attached hereto as **Exhibit 3**.

25. Stillitano was represented by legal counsel and negotiated the terms before entering the Employment Agreement and the aforementioned Covenants Agreement.

26. In the Covenants Agreement, "Executive" refers to Stillitano and "Company Group" refers to Relevent and its parents, subsidiaries, and affiliates.

27. The Covenants Agreement contains a "Non-Competition and Non-Solicitation of Customers or Clients" provision, which states:

> Executive agrees that beginning on the date Executive executes this Covenants Agreement and continuing for one (1) year after the last date of Executive's employment with the Company, Executive shall not: (a) directly or indirectly engage in any business (whether as an employee, consultant, director, officer, partner, member, investor or shareholder) that is a Competitive Business; or (b) directly or indirectly seek to diminish the relationships between the Company Group and any of their investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors or service providers or seek, directly or

>indirectly, to divert such relationships for Executive's personal benefit or to such firm or other person or entity with whom Executive may then be employed or otherwise associated.

Ex. 1, ¶ 3.

28.     "Competitive Business" is defined as "(a) a business that is in competition with any business of the Company Group"; and "(b) any business, profession, or other endeavor that directly or indirectly engages in the staging, organization, promotion, marketing or commercialization of international soccer events or rights related thereto, anywhere in the world." *Id.* at ¶ 5.

29.     In the Covenants Agreement, Stillitano agreed that the non-solicitation and non-competition provisions are "fair and reasonable" and "reasonably required for the protection of the Company Group." *Id.* at ¶ 8. Stillitano acknowledged that the restrictions "would not preclude [him] from securing suitable employment commensurate" in light of his "skills and abilities." *Id.*

30.     Stillitano further acknowledged that Relevent's confidential information and trade secrets would be "subject to the risk of inevitable disclosure" if he were to compete with Relevent. *Id.* at ¶ 1(e). He agreed that, in the event of his breach, he would indemnify Relevent for "any and all losses, costs, fees (including, without limitation, reasonable attorneys' fees), expenses, disbursements, and damages" in connection with Relevent's enforcement of the agreement. *Id.* at ¶ 8(d).

### IV.    **Stillitano Violates the Covenants Agreement.**

31.     Because of the COVID-19 pandemic, Relevent cancelled its 2020 in-person soccer events and tournaments, a cornerstone of its business. As a result, Relevent and Stillitano agreed to reduce his base salary from $625,000 to $200,000, effective May 1, 2020. Stillitano acknowledged and accepted the salary reduction, and he continued to be employed by Relevent as its Executive Chairman.

32.     In the Spring of 2021, Stillitano asked Relevent's Chief Executive Officer, Daniel Sillman ("Sillman"), to terminate his employment with Relevent so that he could receive severance benefits in accordance with the terms of his Employment Agreement, which would exceed his reduced salary.  Relevent granted Stillitano's request and terminated his employment on May 7, 2021.

33.     Stillitano failed to execute a release agreement in a form satisfactory to Relevent, which was a precondition of his receipt of severance benefits under the terms of the Employment Agreement.  Nevertheless, Relevent paid Stillitano $203,125.05 in severance benefits between June 15, 2021 and January 30, 2022.

34.     In the Fall of 2021, Relevent learned from several sources (including senior executives at multiple European soccer clubs) that Stillitano was attempting to organize soccer matches to be held in the United States during the summer of 2022.  The matches would involve A.C. Milan, Barcelona, Juventus, Real Madrid, and other European soccer clubs that are Relevent's business partners.

35.     Beginning in November 2021, news outlets reported that Stillitano was working for Lega Serie A, the premier Italian football league, to expand its presence in the United States.  One article reported that Stillitano was planning "a series of events, programs and social initiatives," including "organizing a series of friendlies," or exhibition matches, between Serie A football clubs in the United States.  That article titled, "Stillitano: 'I'll explain the Serie A expansion plan in the USA," dated December 4, 2021 is attached hereto as **Exhibit 4**.  Another article reported that Stillitano and Scott Guglielmino ("Guglielmino"), a former ESPN executive, were opening Serie A's first headquarters in New York in January 2022.  That article titled, "Football: Lega Serie A,

7

New Headquarters in New York From January," dated November 26, 2021 is attached hereto as **Exhibit 5**.

36. On November 29, 2021, Sillman wrote to Stillitano's attorney about these media reports and put him on notice that Stillitano's role with Serie A is "competitive with Relevent's core business." The email correspondence between Sillman and Stillitano's counsel dated November 29, 2021 through January 28, 2022 is attached hereto as **Exhibit 6**. Despite repeated inquiries, Stillitano's attorney did not confirm that Stillitano would resign from his role with Serie A.

37. In early 2022, Sillman heard from multiple sources that Stillitano was attempting to organize and market at least one soccer match involving European soccer clubs at large venues, including Allegiant Stadium in Las Vegas, Nevada. Upon information and belief, Allegiant Stadium is operated and managed by ASM Global, a venue management and services company.

38. Sillman directly contacted Stillitano to discuss his concerns about Stillitano's violation of his contractual obligations. Sillman urged Stillitano to comply with his Covenants Agreement and informed him that Relevent would be forced to commence a legal action if he did not do so.

39. By letter dated February 1, 2022, Relevent's counsel demanded that Stillitano's counsel confirm in writing that, notwithstanding the public and private reports regarding his efforts to directly compete with Relevent, Stillitano was adhering to the terms of the non-solicitation and non-competition agreement. Relevent's counsel's letter dated February 1, 2022 is attached hereto as **Exhibit 7**.

40. On February 7, 2022, Stillitano's counsel responded by letter stating that he "rejected in its entirety that Mr. Stillitano 'has ignored his contractual non-competition

commitment,'" and contended that the restrictive covenants were unenforceable because of "Relevent's failure to honor the financial commitments it made to Mr. Stillitano, including, but not limited to, the salary payable to him." Stillitano's counsel also wrote, "I know over the last few days Dan Sillman has repeatedly reached out to Charlie to discuss what he hoped could be the amicable resolution of these issues. We agree that this would be the most desirable outcome and we welcome such a discussion with the principals (including Stephen Ross) as well as us as counsel." Stillitano's counsel's letter dated February 7, 2022 is attached hereto as **Exhibit 8**.

41. The parties then engaged in numerous discussions, and Relevent was led to believe that Stillitano would comply with the terms of the Covenants Agreement.

42. However, Sillman then learned from numerous sources that Stillitano was using his business partners (Guglielmino, Kwame Bryan ("Bryan"), and Christian Unger ("Unger")) to continue organizing the same soccer matches for summer 2022.

43. Upon information and belief, Sillman has longstanding relationships with Bryan and Unger. Bryan is the former Senior Vice President of Event Sales and Venue Partnerships at Relevent. Unger is the former Director of Competitions at FIFA, the international governing body of football. In addition, upon information and belief, Unger previously worked for Stillitano at a company called ChampionsWorld, a marketing agency focusing on European soccer matches in the United States.

44. In or about early 2022, Relevent was advised that, in addition to Allegiant Stadium, Stillitano's business partners had approached several venues about hosting soccer matches during the summer of 2022, including AT&T Stadium in Arlington, Texas; Levi's Stadium in Santa Clara, California; and the Rose Bowl Stadium in Pasadena, California. Relevent was also told that

Guglielmino had approached Relevent's media partners (including ESPN, which holds the exclusive media rights to Relevent's largest soccer tournament) about covering the matches.

45. In or around March 2022, multiple news outlets reported that Real Madrid and Barcelona were considering playing a pre-season match at Allegiant Stadium in summer 2022. Two such articles titled, "Real Madrid and Barcelona could play El Clasico in Last Vegas next summer – report" and "Barcelona and Real Madrid could play El Clasico in Last Vegas next season" dated March 22, 2022 are attached hereto as **Exhibit 9**.

46. While Executive Chairman of Relevent, Stillitano organized this *same* match at the *same* venue. This match, known as a "pre-season El Clásico," was scheduled for the summer of 2020, but it was cancelled due to the COVID-19 pandemic. Stillitano knew all of Relevent's confidential information concerning the El Clásico, including Relevent's marketing strategies and contractual arrangements between and amongst Relevent and its media partners, soccer clubs, and Allegiant Stadium.

47. By letters dated March 16 and 23, 2022, Relevent demanded that Guglielmino, Bryan, and Unger immediately cease organizing soccer events, selling the media rights to those matches, and/or promoting Serie A in the United States until the expiration of Stillitano's restricted period (*i.e.*, through May 7, 2022). Relevent explained that Stillitano was contractually prohibited from competing with Relevent "indirectly" and their conduct was interfering with Relevent's contractual agreement. These individuals did not respond to Relevent's counsel's letters, which are attached hereto as **Exhibit 10**.

48. On March 30, 2022, Barcelona rejected Relevent's proposal to play summer 2022 matches in the United States, citing its prior agreement to work with Stillitano and his business partners. Barcelona is a long-standing business partner of Relevent and its refusal to work with

Relevent to schedule soccer matches will cost Relevent significant revenue in excess of $30 million. If Relevent's business relationships with A.C. Milan, Barcelona, Juventus, and Real Madrid are severed due to Stillitano's interference, Relevent will lose hundreds of millions of dollars in potential revenue.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

49. Relevent repeats and re-alleges Paragraphs 1 through 48 of this Verified Complaint as if fully set forth herein.

50. Relevent and Stillitano executed the Covenants Agreement, and Stillitano received good and valuable consideration for the promises he made therein.

51. Relevent has performed all of its obligations under the Covenant Agreement.

52. The Covenants Agreement contains a valid, enforceable, and binding "Non-Competition and Non-Solicitation of Customers or Clients" provision.

53. Stillitano freely agreed and consented to be bound for a period of one year by the "Non-Competition and Non-Solicitation of Customers or Clients" provision and to refrain from "directly or indirectly engag[ing] in any business (whether as an employee, consultant, director, officer, partner, member, investor or shareholder) that is a Competitive Business" or "directly or indirectly seek[ing] to diminish the relationships between the Company Group and any of their investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors or service providers or seek, directly or indirectly, to divert such relationships for Executive's personal benefit or to such firm or other person or entity with whom Executive may then be employed or otherwise associated."

54. Stillitano breached the "Non-Competition and Non-Solicitation of Customers or Clients" provision by, among other things, organizing soccer events in the United States and seeking to diminish the relationships between Relevent and its investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors, and service providers.

55. As a direct and proximate result of Stillitano's breach of contract, Relevent has been denied the benefit of its bargain with Stillitano. Relevent has sustained, and will continue to sustain substantial damages, including the loss of client relationships, good will, significant business opportunities, as well as harm to its reputation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Relevent demands judgment against Defendant Stillitano as follows:

A. A temporary restraining order and a preliminary and permanent injunction enjoining Defendant Stillitano and his agents and all other persons who are in active concert or participation with Stillitano (including Guglielmino, Bryan, and Unger) from (a) engaging in any business (whether as an employee, consultant, director, officer, partner, member, investor or shareholder) that is a Competitive Business (as defined in the Covenants Agreement); or (b) directly or indirectly diminishing the relationships between the Company Group (as defined in the Covenants Agreement) and any of their investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors or service providers or seek, to divert such relationships for Executive's personal benefit or to such firm or other person or entity with whom Executive may then be employed or otherwise associated;

B. Extension of the one-year period in the Covenants Agreement to account for the period in which Defendant Stillitano violated the Covenants Agreement;

C. Monetary damages in an amount to be determined at trial, including, but not limited to, actual, consequential, and/or incidental damages;

D. Attorneys' fees and/or costs in the maximum amount permitted and/or provided for by law and/or by contract incurred as a result of this action; and

E. Such other and further relief as this Court deems just and proper.

Plaintiff Relevent demands a jury trial.

Dated: New York, New York
April 7, 2022

           GIBSON, DUNN & CRUTCHER LLP

           By: */s/ Harris M. Mufson*
               Harris M. Mufson
               200 Park Avenue
               New York, NY 10166
               Tel.: 212.351.3805
               Fax: 212.817.9505
               hmufson@gibsondunn.com

           *Attorneys for Plaintiff Relevent Sports, LLC*

## VERIFICATION

STATE OF NEW YORK )
                  ) ss:
COUNTY OF NEW YORK )

DANIEL SILLMAN, being duly sworn, deposes and says:

I am the Chief Executive Officer of Plaintiff Relevent Sports, LLC. I have read the foregoing Verified Complaint and know the contents thereof. The matters set forth therein are true and correct to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters I believe them to be true.

_____
DANIEL SILLMAN

SWORN TO AND SUBSCRIBED before me on this 7th day of April, 2022.

_____
Notary Public

Printed Name: Juan Carlos Campoverde

My Commission Expires: 10/01/2022

JUAN CARLOS CAMPOVERDE
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CA6381365
Qualified in Kings County
My Commission Expires 10-01-2022

14