# EXHIBIT 1

# EMPLOYEE COVENANTS AGREEMENT

THIS EMPLOYEE COVENANTS AGREEMENT (this "**Covenants Agreement**") dated as of June 21, 2018 by and between Relevent Sports, LLC, a Delaware limited liability company (the "**Company**"), and Charlie Stillitano ("**Executive**").

WHEREAS, the Executive entered into an employment agreement, dated as of the date hereof, with the Company (the "**Employment Agreement**");

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in the Employment Agreement, and for other good and valuable consideration, it is hereby covenanted and agreed by Executive and the Company as follows:

1. *Confidentiality and Non-Disclosure*. (a) Executive understands that during Executive's employment Executive shall have access to confidential and proprietary information (the "**Confidential Information**") of the Company and its parents, subsidiaries and affiliates (the "**Company Group**"). Executive may also receive Confidential Information prior to the actual commencement of Executive's employment. Beginning on the date Executive executes this Covenants Agreement Executive may not use, divulge, disclose or otherwise make accessible to any other person or entity any Confidential Information except (i) while employed by the Company, in the business of and for the benefit of the Company Group or (ii) as otherwise required by law. In this connection, if Executive receives a subpoena or request for disclosure of Confidential Information, Executive agrees to provide prompt written notice to the Company prior to responding to such subpoena or request. Executive further agrees to cooperate with the Company Group in taking appropriate steps to maintain the confidentiality of the Confidential Information. These obligations shall remain in effect during the period of Executive's employment and after the termination thereof, regardless of the reason for such termination.

   (b) For purposes of this Covenants Agreement, "**Confidential Information**" means any non-public information (whether oral, written or contained on computer systems or other media) relating to the business or affairs of:

   (i) the Company Group;

   (ii) any existing or former client of the Company Group;

   (iii) any existing or former officer, director, employee or shareholder of the Company Group; and

   (iv) any consultants, vendors or such other third parties whose information the Company Group has an obligation to protect wherever and however obtained.

   (c) "**Confidential Information**" includes, but is not limited to:

   (i) information concerning finances, strategic or financial plans, business plans, trade secrets, intellectual property and Developments (as defined below), methods, techniques, operations, investments, project information, marketing plans, future transactions, employee lists and employees' compensation and management's compensation;

(ii) information encompassed in materials, surveys, charts, drawings, designs, plans, proposals, reports, research, marketing and sales plans, costs, quotations, specification sheets and recording media; and

(iii) information that relates directly or indirectly to the computer systems and computer technology of the Company Group including, but not limited to, source codes, object codes, reports, flow charts, screens, algorithms, use manuals, installations and/or operation manuals, computer software, spreadsheets, data computations, formulas, techniques, databases and any other form or compilation of computer-related information.

(d) Executive's obligations with respect to Confidential Information shall continue after Executive's employment with the Company, regardless of whether Executive resigns, with or without Good Reason, or Executive's employment is terminated, with or without Cause. Nothing in this Covenants Agreement prohibits Executive from reporting possible violations of law or regulation to an appropriate governmental agency or entity and that pursuant to the federal Defend Trade Secrets Act of 2016, the Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(e) Furthermore, Executive acknowledges and agrees that if Executive joins a Competitive Business (as defined below) subsequent to the cessation of Executive's employment, any of the Confidential Information, proprietary information and intellectual property (including Developments) obtained by Executive during Executive's employment would benefit Executive and be subject to the risk of inevitable disclosure in the course of any new position Executive may hold to the competitive disadvantage of the Company Group.

(f) Executive further understands that it is the Company Group's policy not to use or accept any confidential information of third parties (including Executive's former employers) without appropriate written authorization. Executive may not use or disclose to the Company Group or any of its affiliates such confidential information of third parties without written authorization approved by the Company.

2. *Return of Confidential Information and Other Items*. Upon Executive's resignation or the termination of Executive's employment for any reason, Executive shall promptly deliver to the Company all Confidential Information (in whatever form or media, including all drafts, originals and copies) that is in Executive's possession, custody or control as well as any blackberries, pagers, computers, tablets, notebooks, cell phones, security cards, identification badges and any other electronic, security and other equipment or items issued by the Company Group.

3. *Non-Competition and Non-Solicitation of Customers or Clients*. Executive agrees that beginning on the date Executive executes this Covenants Agreement and continuing for one (1) year after the last date of Executive's employment with the Company, Executive shall not: (a) directly or indirectly engage in any business (whether as an employee, consultant, director, officer, partner, member, investor or shareholder) that is a Competitive Business; or (b) directly or indirectly seek to diminish the relationships between the Company Group and any of their investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors or service providers or seek, directly or indirectly,

to divert such relationships for Executive's personal benefit or to such firm or other person or entity with whom Executive may then be employed or otherwise associated.

4. *Non-Solicitation of Employees and Non-Hire*.  Executive agrees that beginning on the date Executive executes this Covenants Agreement and continuing for one (1) year after the last date of Executive's employment, Executive shall not directly or indirectly (a) solicit or induce, or cause others to solicit or induce, any Restricted Person (as defined below) to terminate his or her employment with the Company Group or to accept employment with any entity other than the Company Group, or (b) hire or facilitate the hiring of any Restricted Person by any entity other than the Company Group.  For purposes of this Covenants Agreement, "**Restricted Person**" means any person who is employed by the Company Group as of the last date of Executive's employment with the Company Group or who was employed by the Company Group within the one (1) year period immediately prior to such date.

5. *Competitive Business*.  For purposes of this Covenants Agreement, "**Competitive Business**" means (a) a business that is in competition with any business of the Company Group; and (b) any business, profession, or other endeavor that directly or indirectly engages in the staging, organization, promotion, marketing or commercialization of international soccer events or rights related thereto, anywhere in the world.  For purposes of this Agreement, Creative Artists Agency, William Morris Endeavor, Wasserman Media Group, Lagardere Unlimited and their respective affiliates shall be deemed to be Competitive Businesses.

6. *Non-Disparagement*.  Executive shall not, beginning on the date Executive executes this Covenants Agreement, and continuing during or at any time subsequent to Executive's employment, disparage the Company Group and/or its present or former directors, officers, shareholders, members, investors, employees or clients, whether directly or indirectly, in any manner whatsoever (whether related to the business of the Company Group or otherwise), except as otherwise required by law.  For the avoidance of doubt, business-related communications, including, but not limited to, statements about work performance, criticism of work performance or information related to cessation of employment, do not constitute disparaging statements and shall not violate this Section 6.  In response to any request for employment reference or verification, the Company confirms that it will provide only neutral information, including Executive's job title and dates of employment with the Company.  In addition, pursuant to applicable law, the filing of any legal action by the Company Group or Executive does not constitute disparagement and shall not violate this Section 6.

7. *Intellectual Property Assignment*.  (a) To the maximum extent permitted by applicable law, Executive hereby irrevocably assigns, grants and conveys to the Company all right, title and interest in, to and under any and all inventions, works of authorship (including computer programs), marks, logos, Internet domain names, trade dress, data, designs, ideas, concepts, strategies, analyses, research, processes and improvements, whether or not patentable and whether or not subject to copyright, that are discovered, developed, created, made, conceived or reduced to practice, whether or not during regular working hours, by Executive, either solely or jointly with others, during the period of Executive's employment with the Company, including in each case any past, present or future intellectual property rights therein (collectively, "**Developments**").  The foregoing applies to any Development that is (i) derived from work performed for the Company Group or from the use of the resources (including equipment, supplies, facilities, trade secrets, confidential information and know-how) of the Company Group, (ii) relates to the Company Group's line of business or that of any affiliate thereof or any actual or demonstrably anticipated research or development of the Company Group or (iii) results from or is suggested by any activity that Executive conducts for the Company Group.  Without limitation of the foregoing, any Development that may qualify as a "Work Made for Hire" as defined in 17 U.S.C. §101 et seq. is and

shall be deemed a Work Made for Hire, with initial ownership of such Development vesting in the Company.

(b) Executive shall provide the Company with prompt written notice of any Development that Executive, alone or jointly with others, discovers, develops, creates, makes, conceives or reduces to practice during Executive's employment with the Company. Executive shall, at all times during and following Executive's employment with the Company and without additional compensation to Executive, take all steps reasonably necessary to effect the intent of this Section 7, including executing any applications, assignments or instruments that the Company deems necessary, and reasonably assist the Company Group's efforts (at the Company's expense) in obtaining, prosecuting, maintaining, defending and enforcing any patent, copyright, trademark, trade secret or other intellectual property right, protection or registration with respect to Developments in the United States or any other country. Executive hereby appoints each of the Company's managers, acting severally, as Executive's attorney-in-fact to execute any documents described in the foregoing sentence on Executive's behalf.

(c) Executive agrees and represents that, except as disclosed by Executive in writing prior to the commencement of Executive's employment with the Company, as of the date of this Covenants Agreement, Executive has no rights to any intellectual property previously made or acquired by Executive.

(d) No provision of this Covenants Agreement is intended to require Executive to assign any right to any Development that was developed entirely on Executive's own time, and for which no equipment, supplies, facilities, trade secrets, confidential information or know-how of the Company Group was used, unless (i) the Development relates, at the time of conception or reduction to practice of the Development, (x) to the business of the Company Group or (y) to the actual or demonstrably anticipated research or development of the Company Group, or (ii) the Development results from any work performed by Executive for the Company Group. Executive hereby acknowledges receipt of notice of this limitation.

8. *Scope and Breach of Restrictive Covenants*. (a) Executive agrees that the foregoing terms, conditions, and restrictions are fair and reasonable, are reasonably required for the protection of the Company Group and that if Executive's employment with the Company were to terminate, such restrictions would not preclude Executive from securing suitable employment commensurate with Executive's skills and abilities. Executive acknowledges that the terms, conditions, and restrictions are ancillary to an otherwise enforceable agreement, including without limitation, (i) the Employment Agreement and (ii) the promise by the Company to provide Executive with immediate access to Confidential Information of the Company in return for Executive's promise not to disclose that information. Executive also understands, acknowledges and agrees that the Company Group shall not have an adequate remedy at law for a violation of the provisions hereof, and that the Company Group shall have the right to have such provisions enforced by way of temporary restraining order or injunction against any breach or threatened breach of such terms, conditions and restrictions, or any other equitable relief, in addition to and not in lieu of any other rights the Company Group may have at law or otherwise under this Covenants Agreement.

(b) Any action for a temporary restraining order, injunction, or other equitable relief brought to enforce the terms hereof may be brought only in the courts of the State of New York, New York County, or in the United States District Court for the Southern District of New York. By Executive's execution and delivery of this Covenants Agreement, Executive submits to the exclusive jurisdiction of the above-referenced courts, waives any objection to such jurisdiction on

the grounds of venue or forum *non conveniens* or any similar grounds, consent to service of process by mail or in any other manner permitted by law, and irrevocably agrees to be bound by any judgment rendered thereby in connection with this Covenants Agreement.  This consent to jurisdiction shall not be deemed to confer rights on any person other than the Company Group.

        (c)    Notwithstanding anything to the contrary herein, if the Company Group seeks to enjoin Executive's alleged violation of any restriction in this Covenants Agreement, Executive agrees that the Company Group may bring the action in any court or before any judicial body having jurisdiction over such a claim.

        (d)    In the event Executive violates any of the terms of this Covenants Agreement, Executive agrees to indemnify, hold harmless and reimburse the Company Group for any and all losses, costs, fees (including, without limitation, reasonable attorneys' fees), expenses, disbursements, and damages of the Company Group in connection with the enforcement hereof.

9.    *Application and Survival of Covenants*.  Executive understands and agrees that the restrictions contained herein are intended to, and shall, apply from the date hereof through their respective periods of applicability (including for perpetuity, if applicable), regardless of whether Executive's employment with the Company is terminated by the Company or by Executive, and regardless of the reason.  Further, Executive understands and agrees that, in the event Executive's employment with the Company is terminated, whether by the Company or by Executive, and regardless of the reason, the restrictions contained herein, as well as all other applicable terms, conditions, and provisions of this Covenants Agreement, shall survive.

10.    *Notices*.  All notices required or permitted under this Covenants Agreement shall be in writing and shall be sufficiently given if personally delivered or sent by certified mail, postage prepaid, with return receipt requested or sent by reputable overnight courier addressed as follows:

If to the Company:

Relevent Sports, LLC
c/o RSE Ventures, LLC
423 West 55th Street, 11th Floor
New York, NY 10019
Attention: Abraham Rondina, Esq.

With copies (which shall not constitute notice) to:

Paul Hastings LLP
200 Park Avenue
New York, New York 10166
Attention:  Stefan G. dePozsgay, Esq.

If to Executive:

At the most recent address provided by Executive to the Company for human resource purposes.

11.    *Modification; Entire Agreement*.

        (a)    With the exception of any trade secret acknowledgment or similar agreement signed by Executive during the course of Executive's employment, the Employment Agreement

5

(including the appendices, annexes and exhibits attached thereto), this Covenants Agreement and the Note (as defined in the Employment Agreement) contain the entire understanding of the parties regarding the terms and conditions of Executive's employment and none of the Employment Agreement, this Covenants Agreement and the Note may be modified except by a signed document approved and executed by the Company and Executive.

(b) Executive acknowledges that, in executing this Covenants Agreement, Executive has not relied on any oral or written representations or understandings other than those explicitly contained herein.

(c) This Covenants Agreement, the Employment Agreement and the Note supersede any and all oral or written understandings regarding the terms and conditions of Executive's employment with the Company Group.

12. *Waiver*. The waiver by either party hereto of a breach of any provision of this Covenants Agreement shall not be construed as a waiver of any subsequent breach. The failure of either party hereto to insist on strict adherence to any provision of this Covenants Agreement on one or more occasion(s) shall not be considered a waiver or deprive that party of the right thereafter to insist on strict adherence to that provision or any other provision of this Covenants Agreement.

13. *Assignment*. This Covenants Agreement shall be binding on and shall inure to the benefit of Executive and Executive's heirs, assigns, executors, administrators and other legal representatives and shall be binding on and shall inure to the benefit of the Company Group, successors and assigns, including, without limitation, any corporation or other entity into which the Company is merged or which acquires all or substantially all of the assets of the Company. This Covenants Agreement is not assignable by Executive without the Company's written consent, and any attempt to do so shall be void. The Company reserves the right to assign this Covenants Agreement to its affiliates, successors and assigns. Furthermore, Executive agrees that Executive's obligations under this Covenants Agreement apply equally to any position that Executive may hold with any member of the Company Group, including any investment funds or limited partnerships sponsored by the Company.

14. *Counterparts*. This Covenants Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

15. *Severability*. It is the intent and understanding of each party hereto that if any term, restriction, covenant or promise is found to be unenforceable by a court or tribunal of competent jurisdiction, then such term, restriction, covenant or promise shall be deemed modified to the minimal extent necessary to make it enforceable. If any provision of this Covenants Agreement is declared void or unenforceable by a court or tribunal of competent jurisdiction, all other provisions shall nonetheless remain in full force and effect.

16. *Governing Law*. This Covenants Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws provisions.

IN WITNESS WHEREOF, the undersigned have caused this Covenants Agreement to be duly executed as of the date first above written.

**RELEVENT SPORTS, LLC**

By: RSE Ventures, LLC
Its Sole Member

By: _____
Name: Matthew Higgins
Title: Chief Executive Officer

EXECUTIVE

_____
Charlie Stillitano

*[Signature Page to Employee Covenants Agreement]*

IN WITNESS WHEREOF, the undersigned have caused this Covenants Agreement to be duly executed as of the date first above written.

**RELEVENT SPORTS, LLC**

By: RSE Ventures, LLC
Its Sole Member

By: _____
Name: Matthew Higgins
Title: Chief Executive Officer

EXECUTIVE

_____
Charlie Stillitano

*[Signature Page to Employee Covenants Agreement]*