

# DAVIDOFF HUTCHER & CITRON LLP

### ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

WRITER'S DIRECT: (646) 428-3248
E-MAIL: lkh@dhclegal.com

April 8, 2022

By ECF
Hon. Victor Marrero
United States District Court
500 Pearl St.
New York, NY 10007-1312

Re:     *Relevent Sports, LLC v. Carmelo Stillitano - Case No. 22-cv-2917*

Dear Judge Marrero:

We represent Defendant Carmelo "Charlie" Stillitano in the above-referenced action. This afternoon, we learned that the Court had issued an *ex parte* Temporary Restraining Order (Dkt. #8), broadly enjoining our client (and apparently others, who are not even before this Court) from undertaking a broad swath of activities. Upon receiving notice of this Order, we followed this Court's procedures outlined in Your Honor's Emergency Individual Rules and Practices, by writing to the Court via e-mail, with all counsel copied. We now write, to memorialize our position as to this extraordinary action on the Court's docket, and to respectfully request that the *ex parte* TRO be immediately vacated, pending an opportunity for Defendant to be heard.

Simply put, we were shocked to receive this *ex parte* Order, particularly as it is expressly at odds with: (i) Your Honor's Special Individual Rules; (ii) the Local Rules of this Court; and (iii) our agreement with Plaintiff's counsel that this application would be heard – on notice – no earlier than Tuesday April 12, 2022.

First, on a procedural level, the issuance of this TRO conflicts with Your Honor's Special Individual Rules, Section V, which envisions that the parties will have a telephone conference with Your Honor, before the issuance of a TRO. (This was also conveyed to us by Mr. Mufson (counsel for Plaintiff Relevent), as well as the SDNY's Office on Order and Judgments.). Further, the issuance of this TRO conflicts with Local Civil Rule 6.1(d), which provides, "[n]o *ex parte* order, or order to show cause to bring on a motion, will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary." Here, no affidavit of good and sufficient reasons was submitted. Nor did the Plaintiff request issuance of an *ex parte* TRO.

DAVIDOFF HUTCHER & CITRON LLP

Hon. Victor Marrero
April 8, 2022
Page 2

Next, on a substantive level, Plaintiff's application lacks merit, because under New York law, Relevent's breach of the parties' employment agreement renders the restrictive covenant unenforceable. Plaintiff deliberately omitted the fact that this very issue is currently being adjudicated in an arbitration before the AAA. In that proceeding, Mr. Stillitano asserts that by terminating him without cause, and refusing to pay his severance, Relevent "destroy[ed] the mutuality of obligation on which the [restrictive] covenant rests". *Random Ventures, Inc. v. Advanced Armament Corp., LLC*, 2014 WL 113745, \*52 (S.D.N.Y. 2014).

We attach hereto Mr. Stillitano's Demand for Arbitration (**Exhibit A)**, which was filed and served more than two weeks ago, on March 24, 2022. Plaintiff's instant application is, in its most favorable light, a retaliatory filing seeking to end-run the confidentiality of the arbitration proceeding, and to short circuit the Arbitration Panel's jurisdiction to perform its work. Equity and fairness dictate that light be shed to reveal the inaccuracies propounded by Relevent, and to demonstrate that – due to Relevent's own breaches – there is quite simply no restrictive covenant in place. This fact makes it all the more troubling that Mr. Stillitano has been enjoined absent a chance to be heard.

Moreover, the TRO itself, is incredibly broad, purportedly applying to people that are completely unbound by the terms of the restrictive covenant, and who are not before this Court and have not been afforded notice. (The TRO bars Mr. Stillitano "and his agents and all other persons who are in active concert or participation with Defendant (including Guglielmino, Bryan, and Unger)…from…(a) engaging in any business (whether as an employee, consultant, director, officer, partner, member, investor or shareholder) that is a Competitive Business; or (b) directly or indirectly diminishing the relationships between the Company Group and any of their investors, clients, customers, sponsors, collaborators, participant soccer clubs or teams, vendors or service providers or seek, to divert such relationships for Defendant's personal benefit or to such firm or other person or entity with whom Defendant may then be employed or otherwise associated.").

The Court has suggested (via email from Ms. Smit at 4:21pm today) that the April 22, 2022 hearing be moved up. We have no objection to that, and will work to submit our brief by Wednesday April 13. Nevertheless, in light of the above, it is respectfully submitted that the *ex parte* TRO must be vacated as a matter of fundamental fairness and due process pending the hearing on this application.

Respectfully submitted,

*/s/ Larry Hutcher___*
Larry Hutcher

cc:     Harris M. Mufson (via ECF)

Exhibit A

***Stillitano v. Relevent Sports LLC***
**Addendum to Demand For Arbitration**

1.      On or about July 21, 2018, Claimant and Respondent entered into an Employment Agreement (the "Contract").  A true and correct copy of the Contract is attached hereto as Exhibit A.[1]

2.      The Contract provided that Claimant Charlie Stillitano shall be employed by the Company (a soccer events and media company in North America and Asia) as Executive Chairman.

3.      Pursuant to the Contact (§3), Company was required to pay to Stillitano a Base Salary in the amount of $625,000 *per annum*.

4.      At all times, Stillitano performed his duties pursuant to the Contract.  At no time did Company allege otherwise.

5.      The Contract (§3) further provided that the Base Salary would be reviewed annually, and that the Company's designee may *increase* the Base Salary based upon the Claimant's performance and other factors deemed appropriate.  In accordance with this provision, and owing to Stillitano's exemplary performance, the Company increased his Base Salary to $650,000 in or about June 2019.

6.      Although the Contract expressly permitted such increases, it contained no provision permitting the Company to reduce Stillitano's Base Salary.

7.      However, the Contract does include an integration clause, which provides that "the Agreement, the Covenants Agreement and the Note contain the *entire understanding* of the parties regarding the terms and conditions of Executive's employment and none of this Agreement, the

---

[1] Unless otherwise stated, capitalized terms used herein shall have the meaning ascribed in the Contract.

Covenants Agreement or the Note may be modified *except by a signed document approved and executed by the Company and Executive.*"

8.      No writing was ever executed by the parties purporting to alter the Contract in any way.

9.      In or about March 2020, upon the onset of the COVID-19 crisis, the Company breached the Contract by unilaterally advising Stillitano that, effective May 1, 2020, it would be reducing the Base Salary payable to Stillitano by approximately 70%, electing instead to pay Stillitano approximately $200,000 *per annum*.

10.      Stillitano promptly objected to this action, by providing Notice to the Company on or about May 29, 2020 of Good Reason (as defined in Section 11(e)(iii) of the Contract). The Notice indicated that the Company had "reduced my Base Salary below $625,000 without my consent" and advised that the "Company's reduction of Executive's Base Salary as set forth in the Agreement is an event of Good Reason."

11.      Together with that Notice, Stillitano sent a concurrent cover letter to the Company, advising of the fact of the Notice, but also stating that the "notice provided was merely done to preserve my rights under the [Contract]." The letter further stated that "[i]t is my intention to resolve these issues with the Company. To that end, it is my hope that we can have a meaningful conversation to find a resolution. I look forward to hearing from you and promptly settling these issues."

12.      In subsequent conversations with the Company seeking to resolve these issues, Stillitano again objected to this impermissible action and indicated his refusal to accept any amounts below the contractually agreed-upon Base Salary.

13.    In response to his objections, the Company acknowledged and agreed that the reduction was intended to be a short-term "deferral" to help alleviate COVID-related cash flow issues.  The Company reassured Stillitano that the substantial shortfall in Base Salary had been earned, and would be repaid to him.

14.    In reliance upon this promise to repay the deferred amount, Stillitano continued to perform his duties as Executive Chairman, but persisted in voicing his objections to the "deferral" of the vast majority of his compensation and seeking repayment of the amounts owed.

15.    After failing to repay the deferred Base Salary for more than a year, on May 7, 2021, the Company informed Stillitano that it was terminating the Contract without Cause.  As of that date, the Company had deferred approximately $463,541 in Base Salary obligations which Stillitano earned, but that the Company had not paid.

16.    Pursuant to the Contract (§11(b)), upon his termination, Stillitano was entitled to receive any Base Salary that had been earned (e.g., the deferred amount), but unpaid up to the date of his termination.  That amount totals approximately $463,541, and has not been paid.

17.    Upon termination without Cause, Stillitano was also entitled to Severance Payments, which are defined as Base Salary for a period of one year from the date of termination. Since the Company purported to terminate the Contract on May 7, 2021, payments at the *per annum* rate of $650,000 were to continue until May 7, 2022 (*see* §11(c)(i)).

18.    Following the purported termination, the Company again breached the Contract by unilaterally electing to pay Stillitano the $650,000 in Severance Payments to which he is entitled over *two* years (as opposed to one year as required in the Contract).  Significantly, in addition to constituting a separate breach of the Contract, is it also a tacit admission that Stillitano's pre-

termination compensation was $650,000 *per annum*.  Through January 21, 2022, the 50% shortfall in monthly Severance Payments is approximately $236,979.

19.     Worse yet, on or about January 28, 2022, the Company, though its President Daniel Stillman, informed Stillitano that the Severance Payments would be cut off entirely, which will leave an additional shortfall in Severance Payments of approximately $176,042.   Thus, the total Severance Payment shortfall will be approximately $413,021.

20.     To date, the Company has failed to pay Stillitano at least $700,520 to which he is entitled under the terms of the Contract.  The Company has also indicated that it will impermissibly withhold an additional approximately $176,042 in funds to which Stillitano is entitled, for total monetary damages of at least $876,562, plus interest.

21.     The Company's actions since March 2020 constitute a breach of the Contract and a constructive termination.   The Company's actions further demonstrate the Company's repudiation of Contract, and the fact that Company is not and has not been ready, willing, and able to perform its obligations thereunder.

## COUNT I
## BREACH OF CONTRACT

22.     Claimant repeats and realleges each of the prior allegations as if fully set forth herein.

23.     At all times, the Employment Agreement dated June 21, 2018 constituted a valid and binding contract between the parties.

24.     Claimant performed all of his obligations under the Contract.

25.     As detailed above, Respondent has breached the Contract by refusing to pay the amounts owed thereunder.

26.     As a result of the foregoing, Claimant has been harmed in an amount to be determined by this Panel, but in no event less than $876,562, plus applicable interest.

## COUNT II
## DECLARATORY JUDGMENT

27.     Claimant repeats and realleges each of the prior allegations as if fully set forth herein.

28.     As detailed above, an actual controversy of a justiciable nature exists between Claimant and Respondent concerning the rights and obligations of the parties under the Contract.

29.     Claimant has a legally protectable interest in this controversy.

30.     Specifically, Claimant has an interest in a declaration that – by and through its refusal to perform its obligations under the Contract – the Company has repudiated the Employment Agreement dated June 21, 2018, and accordingly the Contract and any of its terms including, but not limited to, the restrictive covenants contained therein, are not binding on Stillitano, and that Stillitano has no further obligations under the Contract.

## COUNT III
## VIOLATION OF THE NEW YORK LABOR LAW

31.     Claimant repeats and realleges each of the prior allegations as if fully set forth herein.

32.     Company has refused to pay Claimant his "wages," as defined by the New York Labor Law ("NYLL") § 190(1), within the time-period prescribed by law.

33.     Company's failure and refusal to pay the above constitutes a willful withholding of "wages" in violation of Article 6 of the NYLL, and specifically NYLL § 191 and 193.

34.     Company's refusal to pay Claimant the "wages" he earned is unlawful, and entitles Claimant to "all reasonable attorney's fees, prejudgment interest [of 9%] as required under the

civil practice law and rules, and…an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]" *See* NYLL §198(1-a).

35.    As a result of Company's violations Claimant has been underpaid by at least $876,562.  Further, Claimant is entitled to recover liquidated damages equal to the amount of the wages withheld, which when applied, provides Claimant a recovery of at least $1,753,124.

36.    Due to Company's withholding of wages, Claimant is also entitled to damages for the unreasonably delayed payment of his severance, interest, back pay, and attorneys' fees, costs and expenses.

37.    Company acted intentionally, maliciously and in wanton disregard of Claimant's rights and punitive damages should also be awarded against Company.

**WHEREFORE**, Claimant prays that the Arbitrator enter an Award in his favor and against Respondent for the following relief:

A.    An award of damages against Respondent, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages;

B.    A declaratory judgment that the actions, conduct, and practices of Respondent violate the laws of the state of New York, indicate a repudiation of the Contract, and that Claimant is therefore excused from any further obligations under the Contract;

C.    An award of punitive damages in an amount to be determined at an evidentiary hearing;

D.    An award of liquidated damages in an amount to be determined at an evidentiary hearing;

E.    Prejudgment interest on all amounts due;

F.    An award of Plaintiff's reasonable attorneys' fees and costs; and

G.    Such other and further relief as the Arbitrator may deem just and proper.